UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA A. KIENZLE,

                    Plaintiff,                              Case Number 11-11930
v.                                                          Honorable David M. Lawson

GENERAL MOTORS, LLC,

                    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTIONS IN LIMINE,
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT,
AND SETTING PRETRIAL AND TRIAL DATES**

Plaintiff Patricia Kienzle filed an amended complaint in this case containing five counts alleging a violation of the Equal Pay Act, and discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and Michigan law. The defendant is General Motors, LLC, by whom the plaintiff still is employed. In an opinion and order adjudicating the defendant's motion for summary judgment, the Court dismissed the retaliation claims and allowed the remaining claims to proceed. The Court held a final pretrial conference, at which a dispute arose over whether the plaintiff's case encompassed a claim that the defendant failed to promote her from a level seven manager to a level eight manager, and whether the plaintiff could claim damages under either the Equal Pay Act or her discrimination theory based on her alleged loss of wages and benefits that would have been due a level eight manager. The Court suspended the final pretrial conference, adjourned the trial date, and directed the parties to present their positions by filing appropriate motions. The defendant filed a motion *in limine* to restrict the scope of the plaintiff's damages proofs to losses allegedly incurred by classification as a part-time employee instead of a full-time employee. The plaintiff filed a response in opposition arguing that her complaint can be read fairly as including allegations that she

was doing the work of a full-time level eight manager, and the defendant's failure to promote and classify her accordingly can be included as part of the discrimination and Equal Pay Act violations for which she can seek damages.  The plaintiff also argues that if that theory cannot be found in her amended complaint, she nonetheless has pursued that theory during discovery, and she should be allowed to amend her complaint further to include it.  The defendant objects to the motion to amend the complaint, contending that it has not taken discovery on that theory and it would be prejudiced. The Court has reviewed the pleadings and motion papers and finds that the papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of the motion. Therefore, it is **ORDERED** that the motion be decided on the papers submitted.  *See* E.D. Mich. LR 7.1(f)(2).

## I.

It is not obvious from the pleadings or the positions the plaintiff had taken in resisting the summary judgment motion that the plaintiff has been attempting to advance the theory that the defendant discriminated against her by maintaining her as a level seven manager and not promoting her to level eight.  At the first session of the final pretrial conference, it became apparent from the plaintiff's demand for damages that she now alleges she has suffered wage and benefit losses as a result of being a seventh level employee rather than eighth level.  The plaintiff has demanded, among other things, the value of benefits such as use of a company car, which is only available to level eight employees, as well as the value of prospective bonuses and raises that she alleges she would have received if classified at level eight.  GM's counsel responded at the final pretrial conference that she was "perplexed" by those demands, because GM has always understood the claims to relate only to the loss of salary and other compensation that the plaintiff alleges she

suffered by virtue of being classified as Flexible Service (part-time), rather than a full-time employee.

Although the parties request different relief in their motions, they repeat the same basic arguments in point and counterpoint throughout their briefing. The motions, therefore, can be treated as two sides of the same coin.

### A.  The current pleadings

The plaintiff insists that the allegations in the amended complaint allow her to argue that her "demotion in May 2009 from 8th level Engineering General Manager to 7th level General Supervisor of Validation led to her being compensated at a flexible service salary." Her fallback position is that she has plainly stated that position in the Final Pretrial Order, which governs the case from this point forward, citing *Rockwell International Corp. v. United States*, 549 U.S. 457, 474 (2007) (stating that it was "irrelevant that the pleadings were never formally amended," because the claims in dispute were clearly stated in the final pretrial order, which "superseded all prior pleadings" and "controlled the subsequent course of the action").

The plaintiff's characterization of the amended complaint is belied by the record, which reflects that in 1997, Kienzle chose to begin working a flexible service schedule pursuant to GM's Flexible Service policy, and she remained a flexible service employee until 2010. *See* Pl.'s Resp. to Mot. for Summ. J. [dkt. #21], Ex. 1, Kienzle Dep. at 43-44, 199. The plaintiff has not claimed previously that she was reduced to flex service at the time of her demotion; only that she continued as a flex service employee, but after the Powertrain reorganization she was forced to start working full-time hours.

-3-

Moreover, her "demotion" from level eight to seven was the act of General Motors Corporation (now known as Motors Liquidation Company), commonly referred to as "Old GM," the company that went bankrupt, which was the plaintiff's former employer. General Motors LLC (New GM), the defendant in this case, did not hire the plaintiff until July 10, 2009; she was a level seven employee at the time.

Kienzle argues that when she "knew that the job was compensating her discriminatorily, she sought out equivalent pay for her equivalent work." She also argues that after she was returned to full-time status, she "remained" a seventh level employee, in contrast with men in her group who were paid as level eight employees at a full-time rate throughout the entire period from May 2009 through the time she left the Powertrain organization by transferring out. The plaintiff reasons that she should be allowed to present evidence showing damages she suffered when GM failed to "reinstate" her to an eighth level position when it restored her to full-time status.

It is beyond question that the plaintiff cannot pursue a claim against the present defendant (New GM) based on the May 2009 demotion, because New GM was not her employer at that time. Rather, all employees of New GM were terminated by Old GM and accepted offers of new employment from New GM. That occurred when New GM acquired the assets of Old GM and took over its operations. Kienzle has not sued Old GM in this action, and she has never seriously maintained that she can recover against New GM for any acts that Old GM took in handling her employment. Moreover, Kienzle voluntarily accepted her employment with New GM as a seventh level employee, at her then prevailing salary. She cannot maintain that this position was "imposed" on her by New GM, based on her free choice to accept the job on the terms offered.

-4-

If Kienzle means to bring any claim against New GM relating to the leveling of her position, then it can only be a claim that New GM failed to promote her from the position she voluntarily accepted as a new employee (seventh level supervisor), to the position she asserts she was entitled to (eighth level manager). However, "a plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000); *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982)). The plaintiff has not alleged any facts to show that she ever asked that GM promote her to an eighth level position. Rather, the record reflects only that she repeatedly discussed with her supervisors and HR representatives the disparity between her pay, her part-time classification, and the actual hours she was working. She has not pointed to anything in the pleadings or the record showing that during any of those discussions she asked to be promoted to an eighth level position.

The plaintiff only addresses the level classification of her job at GM in four paragraphs of her amended complaint, where she alleges as follows:

8.      Both the Assistant Staff Engineer and the Engineering Group Manager of Validation were classified as 8A positions.

9.      Under the job share program Plaintiff shared a full-time job with another female employee, each working three days per week and receiving compensation for 24 hours of pay per week.

-5-

10.     In May of 2009 Plaintiff was demoted to General Supervisor of Validation, a 7A job classification.

11.     After receiving the demotion to General Supervisor of Validation Plaintiff was responsible for the full position as an Engineering Group Manager, but she was no longer "sharing" the job with her job share partner.

First Amend. Compl. [dkt. #3] ¶¶ 8-11.  Those paragraphs do not allege any injury that the plaintiff suffered as a result of being classified in a seventh rather than an eighth level job.  Rather, she alleges, as she does throughout her amended complaint, that after the "demotion" she was forced to do a full-time job, despite the fact that she was paid part-time wages.

The plaintiff has never alleged that she sought out a level eight promotion.  The pleadings cannot be read to allege that the defendant discriminated against her by not elevating her to that position.

The plaintiff's fallback argument can be dispatched easily: the Court has not yet entered a Final Pretrial Order, and therefore the reasoning of *Rockwell International Corp. v. United States* does not apply.  The present dispute emerged during the final pretrial conference, and until the question is resolved, no order will be entered.

### B.  Amending the complaint

The plaintiff argues that if her claims tying her damages to level eight managers' compensation are not presented in her first amended complaint, then she should be permitted to file a second amended complaint to bring them into the lawsuit.  The defendant objects because the request to amend comes long after discovery closed, and the amendment would inject a new theory into the case that the defendant did not anticipate or seek to explore in discovery.  The plaintiff responds that the substance of her claims were presented adequately and known to the defendant

-6-

because (1) the plaintiff stated them in her EEOC charge, and (2) her interrogatory answers revealed her claims based on the level classification.

Motions to amend before trial are governed by Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) requires a party seeking to amend its pleadings at this stage of the proceedings to obtain leave of court. Although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001).

Failure to plead an available claim in a timely manner deprives an opposing party of "notice that it would have to defend" against the new claim. *Ibid.* Certainly, the plaintiff has been aware of the facts upon which she would build her failure-to-promote theory. Courts are especially inclined to deny a motion brought under Rule 15 "if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1487 (2d ed. 1990); *see Wade*, 259 F.3d at 459 (finding undue delay where the plaintiff knew the facts forming the basis of the amended claims but failed to plead the claims in the original complaint).

-7-

The plaintiff insists that the defendant was on notice of her charges that the defendant should have been compensating her as a full-time level eight manager, because she laid that down in her EEOC charging statement and repeated it in her interrogatory answers. The Court disagrees. The EEOC charge states:

> On or about May 1, 2009, I was demoted from Engineering Group Manager to General Supervisor. I was told my job was "less technical". I was placed in a full-time job as a 32-hour Flex Service employee. My work demand continued to grow in the summer as we launched lab 24/7. I worked > 40 hours on a weekly basis. Sometimes 50-60 hours, in office hours as well as additional work at home. Human resources and other members of management knew of the disparity of my work hours vs. hours paid. I repeatedly brought this issue to members of management — asking for direction and/or return to full-time. I noted that my work schedule (32 hours) is not compatible with the work required. No action was taken. I have not been paid for my hours worked nor have I been compensated for overtime unlike other male workers who were paid for their time and retained their positions.
>                                         * * *
> I believe that I have been demoted, denied compensation for hours worked [and] subjected to a lower rank . . . on the basis of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Pl.'s Mot. to Amend., Ex. 2, EEOC Charge. The plaintiff certainly alleges that she was demoted improperly, but, as noted earlier, the defendant in this case did not take that action. As stated in her charge, that occurred on May 1, 2009, and the parties do not dispute that this "releveling" of her job from level eight to seven was carried out by Old GM, two months before the plaintiff was hired by New GM in July 2009. Nothing in the charge states or implies that her current employer should have promoted her to level eight, or discriminated against her by its failure to do so.

Similarly, she summarized her claims in her interrogatory response as follows:

> All males in my group were compensated for their hours worked. The workload required me to work many hours beyond 32 hours each and every week to cover the demands of a full time job. I repeatedly brought the issue of the disparity between my work hours and my pay to my management. In one memo, I even stated that . . . this is an acknowledgment that my pay is not compatible with the work required.

-8-

No action was taken by my manager — Michael Coutts, my Director, Jeffery Baran or Fonda Dietz, Shanell Weatherspoon or Andrea Ebbitt — all of Human Resources. There was no reduction or reallocation of my workload, nor an offer to compensate me for my hours worked.

The male that replaced me was compensated for his time worked with both Overtime pay and Compensatory time off in addition to being paid for 40 hours of work for doing the same job that provided me with 32 hours of pay and no additional compensation of pay or paid time off for my work hours.

* * *

GM should be responsible to pay me for time worked — just as they did for the males. I notified GM of this disparity numerous times. Yet, they took no action, nor gave any direction to address the disparity. GM's own Policy defines Management as being responsible [for] the management of hours worked. Their negligence resulted in this situation going on for months and months. My EEOC charges and GRIT submissions additionally brought this matter to GM's attention. GM failed to correct the disparity.

* * *

GM customarily pays higher ranked employees higher pay.

* * *

[Chart Showing Bonus Schedules by Job Level]

* * *

GM has Manager, (8th level) jobs posted as lateral move only — [m]y performance, education, 26 years seniority, and 16 years experience at a Manage[ment] level qualify me for a Manager position. GM's practice of excluding demoted candidates from being considered for Manager positions is discriminatory.

* * *

When forced to leave the Engineering Staff, I was placed in a position that is significantly lower in rank than any other job I had previously held in the Engineering organization.

Pl.'s Mot. to Amend, Ex. 3, Interrogatory Responses at 3-4. That response, like the EEOC claim, contains no reference to any request for promotion, and only refers to the "demotion" that occurred in May 2009. Moreover, although the plaintiff alleges that GM's practice of allowing only level eight candidates to apply for lateral transfers to eighth level jobs is "discriminatory," that restriction evidently applies to all seventh level employees at GM regardless of gender. The plaintiff nowhere has alleged that any male seventh level employee was allowed to apply for or was promoted to a

level eight job, while the plaintiff or any other female level seven employee was denied that opportunity.

It appears that the plaintiff's theories of liability and damages have been evolving throughout the prosecution of this case. And when a case proceeds to trial on grounds that have been thoroughly vetted by the parties through discovery, amendments to conform pleadings to those theories are entirely proper. However, based on the present record, it appears to the Court that the main thrust of the plaintiff's complaints have been the defendant's practice of paying her as a part-time employee while demanding full time work, and not compensating her for overtime to boot. The defendant has been defending against *that* claim; releveling — failing to promote — has not been part of the equation.

Leave to amend should not be allowed where there is "some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). An amendment to a complaint prejudices a party where the amendment will require that party to prepare an additional defense strategy and expend additional resources to defend against new claims. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973). In *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 459 (6th Cir. 2001), the Sixth Circuit held that the plaintiff's amendment would cause prejudice to the defendant because "[t]he dispositive motion deadline has already past, [the] defendant has filed a motion for summary judgment on all claims alleged in the original complaint . . . [and] significant discovery has been completed including more than 20 depositions."

The Sixth Circuit has repeatedly held that allowing amendments after the close of discovery prejudices the defendant. *See Duggins,* 195 F.3d at 834 (denying leave to amend because "discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had

-10-

been filed"); *Parry*, 236 F.3d at 306-07 (upholding denial of leave to amend complaint where amendment was sought more than a year after original complaint was filed, summary judgment had been granted to defendants two months earlier, and plaintiff was attempting to add a new legal theory).  The Sixth Circuit even has found that "amendments on the *eve* of the close of discovery would be prejudicial to defendants and unduly delay trial."  *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005).

The plaintiff will not be permitted to amend her complaint at this stage of the lawsuit.

## C.

Turning now to the question of the evidence of damages that will be allowed at trial, the Court reiterates that claims of discrimination and violation of the Equal Pay Act remain.   The Act states that, subject to certain exceptions, "[n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).  As the Court noted in its opinion on the motion for summary judgment, the definition of "compensation" under the Equal Pay Act is exceptionally broad and inclusive. [dkt. #37] at 17-21.  Evidence of the benefits that her male peers at GM received, regardless of their nominal job title or "level," is relevant to the plaintiff's claim that she was underpaid, assuming that she can show she did equal or greater work compared with those men, and yet GM paid them more than her.  Kienzle is entitled to present to the jury any relevant and admissible evidence she can offer that tends to show she did the same work

as men who worked with her at GM, and that GM paid her less for doing that work than it paid her male peers.

However, despite its broad sweep, the Equal Pay Act does not anywhere embrace "opportunities for promotion" in its definition of "wages," "rate," or "compensation." The Act mandates equal *pay*, not equal *prospects*. And although the plaintiff might have had a colorable claim for denial of "prospects" under Title VII if she could show she was denied a promotion or opportunities for promotion on the basis of her sex, she has not raised a claim for failure to promote because she has not alleged that she asked for a promotion in the first place. Any evidence relating to compensation, conditions of employment, benefits, or future prospects that would depend solely on the plaintiff being classified at a nominal job level of eight rather than seven since joining New GM are therefore irrelevant to the litigation of any of the live claims that remain in this case.

II.

The defendant also has preemptively moved to preclude the plaintiff from introducing several other items of evidence. The defendant challenges what it describes as opinion evidence regarding the motivations of the defendant in its treatment of the plaintiff and other employees under FRE 701; testimony regarding the job duties, overtime pay, and favorable treatment received by other employees as outside the plaintiff's personal knowledge, in violation of FRE 602; evidence in the form of handwritten and typed notes created by the plaintiff as hearsay; and statements of Mr. Steve Nash tending to show his attitude towards the plaintiff as hearsay.

These evidentiary disputes are best determined in the context of the trial, although the Court will address them now in a non-definitive ruling. *See* Fed. R. Evid. 103(b).

-12-

The defendant asks the Court to exclude the opinion testimony of the plaintiff and other lay witnesses regarding their perception of the motives or reasons for any of GM's actions regarding plaintiff and other employees. The defendant fears that the plaintiff might "try to elicit testimony from GM witnesses regarding plaintiff's alleged unfair treatment by GM or evidence regarding their personal work circumstances." Testimony regarding specific instances and interactions between employees and management is not opinion testimony subject to the limitations of Federal Rule of Evidence 701. Moreover, the opinion of a witness regarding the motivations of an individual is admissible under Rule 701, as long as the witness provides an adequate foundation and does not provide legal conclusions. *See Torres v. County of Oakland*, 758 F.2d 147, 149-150 (6th Cir. 1985) (quoting 3 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 701[03], p. 701-711 (1982)).

The defendant anticipates that the plaintiff will offer her own testimony regarding her opinion about the qualifications and job duties of other GM employees that the plaintiff believes are comparable to herself, overtime compensation received by other employees, and favorable treatment received by male employees. The defendant believes that this evidence is inadmissible under Rule 602 because the plaintiff lacks personal knowledge of these matters. The Court disagrees. The plaintiff has sufficient personal knowledge of these areas because she has been employed by the defendant and its predecessor for over 20 years and has demonstrated her experience in each area.

The defendant believes that the plaintiff may offer her own typed or handwritten notes, charts, summaries or chronologies that she has prepared concerning her employment with GM to prove the truth of the statements in those documents. The defendant argues that these items are hearsay and inadmissible under Rules 801 and 802 because they are out-of-court statements. However, the parties now agree that the notes and memoranda may be used in at least three ways:

the plaintiff may testify to the content of the notes if she demonstrates a relevant, non-hearsay purpose; the notes may be used to refresh her memory if required; and the notes may be read into evidence as a recorded recollection, with a proper foundation.  The plaintiff's handwritten notes might also be admitted as present sense impressions.  However, the typed summaries of the notes are not present sense impressions and cannot be admitted as exhibits unless the plaintiff establishes a proper purpose.

The defendant argues that three statements made by Steve Nash should be excluded as double hearsay.  The first statement, "I got rid of my problem, now you get rid of yours," was relayed to the plaintiff by Dave Stark.  The second, "[w]e're going to show her," and the third, "[t]hose two won't be going to the prom anytime soon," were relayed to the plaintiff by a co-worker. If the plaintiff wishes to testify that other employees told her what Mr. Nash said, her testimony likely would be hearsay.  However, depending on the purpose for which the plaintiff might offer them, the statements of Mr. Nash themselves would not be hearsay, as the statements would not be admitted to prove the truth of the matters asserted.  If the plaintiff calls the individual employees who heard Mr. Nash's statements directly from him, those employees could testify to the statements.

The defendant also has asked the Court to prevent the plaintiff from calling any witnesses other than herself because of a general failure by the plaintiff to comply with the disclosure rules contained in Federal Rules of Civil Procedure 26(a)(1) and 26(a)(3).  The Court will address that argument at the final pretrial conference or in a later order.

III.

The Court finds that a claim for damages based on the defendant's failure or refusal to "relevel" the plaintiff to a level eight positon cannot be found in the current pleadings, and that

-14-

theory has not been developed during discovery. The plaintiff's eve-of-trial motion to amend her complaint will be denied because the defendant would be prejudiced if it were required to prepare to defend against a new claim on the eve of trial, after discovery has closed, and following the determination of the motion for summary judgment. However, the plaintiff will be permitted to offer evidence of her damages flowing from the defendant's alleged violation of the Equal Pay Act and for discrimination as set forth above.

Accordingly, it is **ORDERED** that the plaintiff's motion to amend the complaint [dkt. #40] is **DENIED**.

It is further **ORDERED** that the defendant's motion *in limine* [dkt. #28] is **DENIED**. This is not a definitive ruling.

It is further **ORDERED** that the defendant's motion *in limine* [dkt. #42] is **GRANTED IN PART**. The plaintiff may not introduce any evidence or argument relating to any claim that she suffered damages that resulted solely as a consequence of her classification as a seventh rather than an eighth level employee. The motion is **DENIED** in all other respects. The plaintiff may introduce any relevant and admissible evidence regarding the compensation and benefits received by her male peers at GM, provided she first submits sufficient evidence for a jury to conclude that those men did work that was substantially equal to the work that she did during the relevant time period.

It is further **ORDERED** that the final pretrial conference will continue on **March 19, 2013 at 3:00 p.m.**

-15-

It is further **ORDERED** that trial will begin on **April 2, 2013 at 8:30 a.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 12, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on February 12, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

-16-